Jarod Bona (234327)
Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589
858.964.2301 (fax)
jarod.bona@bonalawpc.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ariix, LLC,<br><br>             *Plaintiff,*<br><br>     vs.<br><br>NutriSearch Corporation and Lyle MacWilliam,<br><br>             *Defendants.* | Case No.: **'17CV0320 LAB BGS**<br><br>**Complaint**<br><br>JURY TRIAL DEMANDED |

Plaintiff Ariix, LLC alleges as follows upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

The *NutriSearch Comparative Guide to Nutritional Supplements* has long been relied upon by consumers and professionals to determine which supplement products they should purchase. Unfortunately for consumers and competition, NutriSearch Corporation developed a lucrative close relationship with one of the world's largest direct sales supplement companies, Usana Health Sciences, Inc.

Usana and Ariix fiercely compete for sales representatives and customers. Ariix is a much newer company in the market and has made it its mission to outcompete Usana on quality and value—and it has succeeded on those fronts. But Usana has something Ariix doesn't: NutriSearch's coveted Gold Medal of Achievement—a designation that is a key marketing tool for any direct sales supplement company able to obtain it. Four companies have obtained the Gold Medal to date. Ariix vigorously sought the Gold Medal, spending hundreds of thousands of dollars on laboratory analyses and certifications that NutriSearch required and submitting multiple applications to NutriSearch. Each time, NutriSearch came up with a new excuse to deny Ariix's application.

When NutriSearch ran out of excuses, it admitted Ariix had "pioneered" a new standard for the Gold Medal and ***still*** refused to award it because it claimed to be reworking its criteria, while

grandfathering current Gold Medal holders during a two-year lull. Now, nearly two years later, NutriSearch is publishing its new edition and, once again, NutriSearch is excluding Ariix from its highest medal ranking.

NutriSearch expressly claims to take an objective approach to "simply document[ing] recent findings in the scientific literature" and takes pains to disclaim that neither Lyle MacWilliam nor NutriSearch "is associated with any manufacturer or product represented in [the] guide." But it turns out instead that NutriSearch has a long, lucrative, and cozy relationship of associating with Usana: NutriSearch's founder and author of the guide, Lyle MacWilliam, has earned a substantial amount in "speaking fees" from Usana and continues to do so today; NutriSearch's current CEO is a former Usana distributor.

NutriSearch did not just fail to disclose its conflicts of interest. It affirmatively deceived consumers into believing it is an objective, neutral evaluator, when in reality it is a shill for one of the largest incumbents in the market. Without public disclosure, it gave that incumbent special "grandfathering" privileges when it banned others from using the same labs for certification. And it continues to refuse Ariix the product ranking that it admitted Ariix had earned.

This is an action for damages, declaratory, and injunctive relief for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

2

# JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 15 U.S.C. § 1121 because this action arises under the laws of the United States.

2. Venue is proper in the Southern District of California under 28 U.S.C. § 1391(b)(3) because there is no judicial district in which this action might otherwise be brought and Defendants are subject to personal jurisdiction in this district. Venue is also proper under 28 U.S.C. § 1391(c)(3) because Defendants are not residents in the United States.

3. Defendants are subject to personal jurisdiction in California because they have minimum contacts with the State of California and this action arises from those contacts:

   A. Defendants interacted with and harmed Plaintiff, who maintains an office in California, has 4,879 representatives working in California, and conducted $5,183,352.30 in sales in California in 2016.

   B. Defendants published books in the stream of commerce and purposefully availed themselves to the privilege of conducting activities in California through their expectation that the books would be purchased and relied upon by consumers within the State of California.

   C. Defendants sold books to Usana representatives in California.

   D. Moreover, Defendants had direct interactions with and certified or rated several California-based manufacturers

in their guides, including Blueberry Health Sciences in Irvine, California.

E.  Subjecting Defendants to suit in California would not offend traditional notions of fair play and substantial justice because Defendants intended to sell books in California and expect California residents to make purchasing decisions in California as a result.

F.  The State of California has an interest for this case to be heard in California because California consumers have been deceived by Defendants.

G.  The United States, as the relevant sovereign, has an interest in having this case heard in a U.S. District Court because Defendants violated federal law, and Congress has authorized jurisdiction in this Court. 15 U.S.C. § 1121.

## PARTIES

4.  Plaintiff Ariix, LLC is an international health and wellness company that markets exclusively branded products through independent representatives, with its principle place of business in Bountiful, Utah. It works with world-renowned experts to promote healthy living through toxic-free products that, after only five short years since Ariix's founding, are available through a carefully curated network of sales representatives in more than a dozen nations including the United States.

5.  Defendant NutriSearch Corporation is a Canadian company with its principle place of business in British Columbia, Canada. NutriSearch publishes the *NutriSearch Comparative Guide*

to *Nutritional Supplements* relied upon for purchase decisionmaking by sales professionals and consumers alike. NutriSearch sells its publications throughout the United States and the World, including in California.

6. Defendant Lyle MacWilliam is a Canadian citizen residing in British Columbia, Canada. MacWilliam is the author the the *NutriSearch Comparative Guide to Nutritional Supplements*.

7. NutriSearch and its employees and agents participated personally in the unlawful conduct challenged in this complaint and, to the extent they did not personally participate, they authorized, acquiesced, set in motion, or otherwise failed to take necessary steps to prevent the acts complained of in this complaint.

## SUBSTANTIVE ALLEGATIONS

8. Ariix is a health and wellness company that utilizes a direct sales model to distribute its products which include, among other things, nutritional supplements. It competes for both customers and independent sales representatives.

9. Ariix holds trademarks for its brand name: Ariix, Registration No. 4242877 (registered Nov. 13, 2012, valid until Nov. 13, 2022); ARIIX, Registration No. 4250956 (registered Nov. 27, 2012, valid until Nov. 27, 2022).

10. Quality in the supplement industry varies widely and, thus, consumers and sales representatives often rely on third-party product reviews to guide their purchase decisionmaking.

11. The *NutriSearch Comparative Guide to Nutritional Supplements* is the comparative supplement review guide that many

turn to, particularly sales representatives in the supplement direct marketing industry. Due to its longevity and other factors further explained below, the NutriSearch guide has become the trusted name among these independent sales representatives.

12. Indeed, independent sales representatives make decisions about which companies to work with and which products to sell based on the ratings contained within the guide.

13. NutriSearch bills itself as an independent company that presents only objective data and analyses to the purchasing public. It publicly prides itself on separating the good from the bad in an industry that has been viewed as existing in a regulatory wild west. NutriSearch seizes upon supplement scandals as a marketing tool.

14. NutriSearch publishes two versions of its guide: a consumer edition and a professional edition. The professional edition is primarily used by sales representatives.

15. The current professional edition is the 5th Professional Edition. NutriSearch does not publish a new edition each year, but instead publishes updates from time to time.

16. Each edition of the guide contains the following statement:

> This guide is intended to assist in sorting through the maze of nutritional supplements available in the marketplace today. It is not a product endorsement and does not make any health claim. It simply documents recent findings in the scientific literature.
>
> This guide was not commissioned by any public sector or private sector interest, or by any company whose products may be represented herein. The research, development, and findings are the sole creative effort of the author and

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NutriSearch Corporation, neither of whom is associated with any manufacturer or product represented in this guide.

17. NutriSearch does not itself conduct laboratory testing or certifications of the products it reviews. Rather, it requires companies seeking inclusion in the guide to undergo expensive and elaborate testing through one of two companies it approves of: NSF International (NSF) and U.S. Pharmacopeial Convention (USP).

18. The most important marketing tool (as it relates to the guide) is NutriSearch's Gold Medal of Achievement Award. As the guide explains, Gold Medal of Achievement winners

> have invested significant time, resources, and money to ensure their products are manufactured to the highest standards possible . . . .
>
> Deservedly so, NutriSearch recognizes these companies and their products as the *Best of the Best*. Graphs of each company's highest-scoring product are included [in the guide].

Lyle MacWilliam, *The NutriSearch Comparative Guide to Nutritional Supplements*, 78 (5th Prof. ed. 2014).

19. Ariix is not Gold Medal certified. It has been seeking Gold Medal status since at least 2014 and has spent several hundred thousand dollars trying to comply with NutriSearch's ever-changing lab certification requirements to attain Gold Medal certification for its Ariix Optimal line of products.

20. Ariix's sales representatives understand that Gold Medal status is fundamentally important to their sales strategy, particularly because Ariix's fiercest competitor, Usana, markets its

7

products as Gold Medal certified. Sales representatives lose sales to competing products as a result.

21. Ariix thus made achieving Gold Medal status its top priority beginning in 2014. But each time Ariix submits its application, NutriSearch comes up with a new, previously unstated requirement or reason why NutriSearch will not certify Ariix.

22. Ariix first applied for Gold Medal status in February and March 2014. NutriSearch denied the application in August 2014 because Ariix (admittedly) misunderstood the requirements of its submission.

23. Ariix made its corrected (second) submission one week later August 13, 2014. NutriSearch again denied Ariix's application September 16, 2014. While the application was under review by NutriSearch, an NBC Dateline expose on the issue of "dry-labbing" at ISO-certified laboratories caused NutriSearch to no longer accept ISO-17025-certified laboratory reports and certifications. NutriSearch, however, applied this new policy *only* on a going-forward basis and exempted Usana and other previous recipients from re-certifying in an approved laboratory, despite acknowledging that "previous GOLD Medal recipients had, in some cases, relied on ISO-17025-certified labs to achieve GOLD Medal status." NutriSearch also specifically acknowledged that "this disclosure was not in any way a reflection on ARIIX."

24. Immediately thereafter, on NutriSearch's prompting, Ariix undertook an expensive new full analysis of its formulation. Due

COMPLAINT

to NutriSearch's new requirements, NSF did not even have the analytical procedures necessary to verify certain nutrients.

25. As NutriSearch would later acknowledge, Ariix "diligently worked with NSF scientists to develop" these protocols and procedures and that Ariix's "pioneering" work would " 'up the game' for all future contenders of the NutriSearch GOLD Medal."

26. NutriSearch thanked Ariix for "pioneering new ground" by developing new testing protocols with NSF. NutriSearch stated that "[t]here is unlikely to be a new edition of the Professional guide for some time, as the 5th edition is not long out of the box; however, as previously mentioned, we can insert your NutriSearch GOLD Medal of Achievement into future printings of the existing guide once current stock has been depleted."

27. One month later, on May 13, 2015, Ariix submitted its third application with its final full NSF laboratory reports. Less than two weeks after that, on May 23, NutriSearch denied Ariix the Gold Medal that NutriSearch had just admitted it had earned and which Ariix had even set a new standard for attaining.

28. NutriSearch claimed that because of the dry-labbing allegations that it had known of for nearly a year, "it came to the difficult decision to suspend any further revisions of the 5th edition of the guide" to create a sixth edition because it "could no longer confidently assure the consumer that ***what is on the label is what is in the bottle***." (Emphasis added.) NutriSearch did not, however, publicly question or disclose its own reservations about the validity of the information in its current publications.

29. Interestingly, Ariix was the *only* qualified recipient of the Gold Medal of Achievement that had at any point submitted 100% of its laboratory certifications from a non-ISO-17025 laboratory; it was also the *only* qualified recipient to submit full labs exclusively from a NutriSearch-approved laboratory.

30. Moreover, NutriSearch at one time justified its ever-morphing criteria by citing to a new label claim by Usana regarding "cell-signaling," but never required Usana to undergo this new testing regimen.

31. NutriSearch gave no timeline for these revisions and stated that it intended to grandfather its current recipients, including Ariix's direct competitor Usana, at least until it could publish the next edition. NutriSearch has not disclosed the grandfathering privileges to the public.

32. Thereafter, NutriSearch's responsiveness to Ariix's inquiries became sporadic and eventually stopped. NutriSearch did not notify Ariix when it finalized its new criteria or when it began accepting applications for the 6th edition. The 6th edition is set for publication within the next two months.

**NutriSearch's Hidden Affiliation and Bias**

33. NutriSearch has long had a cozy relationship with Usana. Lyle MacWilliam, author of the guide and former CEO of NutriSearch, is a former Usana sales representative, a former member of Usana's scientific advisory board, and has had regular speaking engagements at Usana's global and regional sales representative

meetings. Indeed, MacWilliam originally designed the guide as a tool to sell Usana products himself.

34. The current CEO of NutriSearch, Gregg Gies, is also a former Usana representative.

35. Usana has given other consideration to NutriSearch, including by heavily promoting its guide and encouraging its representatives and consumers to purchase the guide. The bulk of MacWilliam's income and a substantial portion of NutriSearch's revenue comes from Usana or Usana-derivative work.

36. During its earlier communications with MacWilliam, Ariix discovered that MacWilliam had been a keynote speaker at a recent Usana convention. Given the importance of the guide in the direct sales supplement industry and the fierce competition between Ariix and Usana, Ariix intimated a desire and eventually made an offer to MacWilliam to speak at one of its conventions.

37. On September 17, 2014, MacWilliam declined a speaking engagement with Ariix, stating he would not be taking any more speaking engagements and citing his changing priorities and desire to be at home with his family. Nevertheless, MacWilliam continued to take paid speaking engagements with Usana on a regular basis.

38. Ariix questioned MacWilliam's apparent exclusive relationship with Usana on multiple occasions. In 2015, after MacWilliam had already told Ariix that he was "retiring" from speaking, Gies deflected by explaining that the speaking engagement

11

had occurred some time ago, assuring Ariix that MacWilliam was not playing favorites in choosing speaking engagements.

39. But MacWilliam continued to consistently take paid speaking engagements with Usana.

40. The Gold Medal of Achievement is not the first time NutriSearch's bias against Ariix has reared its head. In 2011, NutriSearch rated Ariix Optimal at 3.5 stars. After public criticism and incontrovertible evidence that Ariix was a top-quality product, NutriSearch stated it was revising Ariix's rating to five stars, but it never actually published or publicly acknowledged this five-star rating.

## COUNT I

## THE LANHAM ACT, 15 U.S.C. § 1125(a)

### False Advertising or Promotion

41. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

42. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—. . .
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

43. Defendant NutriSearch made false and/or misleading descriptions and/or representations of fact in each of its consumer and professional edition guides.

44. NutriSearch's statements that neither NutriSearch nor the author of the guide "is associated with any manufacturer or product represented in this guide" is literally false:

    A. MacWilliam has a long-running association with Usana as a keynote speaker at its conferences. This directly contradicts the statements on the inside cover pages of NutriSearch's guides.

    B. MacWilliam has turned down offers for speaking engagements at Ariix events, citing personal reasons, while continuing to speak on behalf of Usana. This directly contradicts the statements on the inside cover pages of NutriSearch's guides.

    C. Both MacWilliam and Gies are former Usana commissioned sales representatives.

45. NutriSearch also made numerous misleading claims:

- **It is not a product endorsement.**

    This is misleading because a substantial proportion of NutriSearch's revenue comes from Usana sales representatives who purchase the guide as a sales tool. MacWilliam originally created the guide as a sales tool. And NutriSearch sells supplement companies on the marketing benefits of participating in its guide.

13

- **It simply documents recent findings in the scientific literature.**

This is misleading because NutriSearch bases its ratings on its own, subjective, and ever-changing criteria rather than any scientific process. NutriSearch also failed to disclose that some of the award winners, like Usana, are grandfathered into less-intensive standards than other supplement companies.

- **Over 1,500 U.S. and Canadian supplements were scientifically rated and compared**.

This is misleading because NutriSearch bases its ratings on its own, subjective, and ever-changing criteria rather than any peer-reviewed scientific process.

- **The guide is an "independent publication."**

This is misleading because NutriSearch has a long-running relationship with Usana.

- **Suggestions of neutral evaluation for Gold Medal of Achievement awards based on "independent laboratory testing" using a "higher standard of evidence" provide "assurance to the consumer."**

This is misleading because NutriSearch bases its ratings on its own, subjective, and ever-changing criteria rather than any scientific process. It is also misleading because NutriSearch grandfathered certain favored manufacturers and exempted them from obtaining new laboratory certifications.

- **"[O]nly four manufacturers have completed the necessary steps to earn a Gold Medal of Achievement."**

This is misleading because Ariix has not only completed the necessary steps, it jumped through additional hoops and "set a new, higher bar" for the

14

Gold Medal of Achievement, yet it has not been awarded the endorsement.

- Other context suggesting the guide is neutral and objective in its ratings of various supplement products is false and misleading.

46. The misstatements contain objective claims as to the neutrality of NutriSearch rather than subjective opinion or puffery. NutriSearch made the statements with the intent of causing consumers to rely upon them.

47. The misstatements were made in connection with goods and services offered by NutriSearch as well as goods offered by Ariix, all of which are in interstate commerce.

48. NutriSearch is not a direct competitor of Ariix, but has caused harm by deceiving consumers in a way that causes them to withhold trade from Ariix and to instead trade with Ariix's competitors. The misstatements directly reduced Ariix's revenues by causing both consumers and professionals to select Usana over Ariix.

49. The statements constitute a commercial advertising or promotion because:

    A. They were designed to promote the goods and services of NutriSearch.

    B. They propose commercial transactions, including but not limited to, the purchase of the guide itself, purchases of periodic updates to the guide, and the purchase of top-rated products featured in the guide.

    C. They promote other companies that propose commercial transactions.

15

  D. They were motivated by NutriSearch's economic interests.

  E. They are sufficiently disseminated to the relevant purchasing public and, in fact, target said purchasing public.

  F. They are in a "traditional advertising format" to the extent that publishers expect purchasers of books to read the statements prior to purchase, which are contained in the inside covers of the book.

50. Consumers are likely to be, and actually have been, deceived by the statements made by NutriSearch in two ways: first, consumers decided to purchase NutriSearch guides because of the statements; and second, consumers (which includes end-consumers and supplement sales representatives) made supplement purchasing decisions because of the statements.

51. The statements relate to descriptions or representations of fact that misrepresent the nature, characteristics, and quality of NutriSearch and its products. The statements also relate to descriptions or representations of fact that misrepresent the nature, characteristics, and quality of Ariix and its services, as well as the nature, characteristics, and quality of its primary competitor, Usana.

## REQUEST FOR RELIEF

**WHEREFORE,** Ariix requests that this Court:

  A. Enter a temporary restraining order against Defendants to enjoin them from continuing their illegal acts;

  B. Declare that Defendants' conduct violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

C. Enter judgment against Defendants;

D. Award Ariix compensatory damages;

E. Award Ariix pre- and post-judgment interest at the applicable rates on all amounts awarded;

F. Award Ariix its costs and expenses of this action, including its reasonable attorneys' fees necessarily incurred in bringing and pressing this case, as provided in 15 U.S.C. § 1117(a);

G. Grant permanent injunctive relief to prevent the recurrence of the violations for which redress is sought in this complaint; and

H. Order any other such relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims.

DATED: February 16, 2017        Bona Law PC

*s/ Jarod Bona*
JAROD BONA

4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589
858.964.2301 (fax)
jarod.bona@bonalawpc.com

*Attorney for Plaintiff*

17

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Ariix, LLC

**DEFENDANTS**
NutriSearch Corporation and Lyle MacWilliam

**(b)** County of Residence of First Listed Plaintiff: Davis
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jarod Bona
Bona Law PC
4275 Executive Square, Suite 200, La Jolla, CA 92037 (858) 964-4589

Attorneys *(If Known)*
'17CV0320 LAB BGS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
§ 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)
Brief description of cause:
False advertising or promotion

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____ DOCKET NUMBER _____

DATE: 02/16/2017
SIGNATURE OF ATTORNEY OF RECORD: s/ Jarod Bona

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____