UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIIX, LLC,<br><br>         Plaintiff,<br><br>v.<br><br>NUTRISEARCH CORPORATION,<br>et al.,<br><br>         Defendant. | Case No.: 17CV320-LAB (BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OR STAY; AND**<br><br>**ORDER DENYING MOTIONS TO STRIKE AND FOR LEAVE TO FILE A SUR-REPLY**<br><br>**[DOCKET NUMBERS 5, 10, 12.]** |

 Plaintiff Ariix, LLC is a nutritional supplement company that competes fiercely with Usana Health Sciences, Inc. Defendant NutriSearch Corporation publishes the *NutriSearch Comparative Guide to Nutritional Supplements*, a guide to nutritional products that is relied on by consumers and professionals. The *Guide* reviews various companies' products, including both Ariix's and Usana's. The *Guide* has been published for years and is now in its sixth edition.

 The *Guide* awards the Gold Medal of Achievement designation to companies that meet particular standards, and to date has awarded this distinction to four different companies. Ariix made a vigorous effort to qualify for the Gold Medal, but

was denied. According to the complaint, NutriSearch admitted Ariix had met the standard, but refused to award the company the Gold Medal because it was reworking its criteria for the distinction. The existing Gold Medal holders, including Usana, were "grandfathered" in during this period. The complaint alleges that the new sixth edition of the *Guide* wrongly fails to award Ariix the Gold Medal distinction.

Ariix brought a Lanham Act claim against both NutriSearch and the *Guide*'s author, Lyle MacWilliam, under a false advertising theory. The complaint does not allege that NutriSearch has said anything false or damaging about Ariix directly. Rather, its theory is that by positioning Ariix somewhat less favorably to its rival Usana while claiming to be objective and neutral, NutriSearch has made false representations that damage Ariix. One set of allegedly false representations is that Ariix or its products are not as good as Usana or its products. The second is that NutriSearch, while claiming to be objective and neutral, is actually a shill for Usana. The Complaint's description of the *Guide* suggests that statements about Usana and its products, Ariix and its products, and the *Guide* itself are found in various places in the *Guide*, rather than all being included together.

**Overview of Motions**

Defendants NutriSearch and MacWilliam filed a motion under Fed. R. Civ. P. 12(b)(6) to dismiss the complaint for failure to state a claim. In the alternative, it requested stay or dismissal under the *forum non conveniens* doctrine. Ariix filed motions to strike a *forum non conveniens* argument from Defendants' reply brief, on the grounds that the argument had not been raised in the opening brief. As a backup, Ariix also filed a second motion for leave to file a sur-reply to address the argument.

/ / /

/ / /

/ / /

**Motion to Dismiss Under Rule 12(b)(6)**

**Legal Standards**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a motion to dismiss, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars-Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). New or expanded allegations in opposition to a motion to dismiss are considered when deciding whether to grant leave to amend, but are not considered when ruling on a 12(b)(6) motion. *See Schneider v. Cal. Dep't of Corr. & Rehab.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

The pleading standard is governed by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and its factual allegations must "raise the right to relief above a speculative level." *Id.* at 555. The complaint must contain enough factual allegations that, accepted as true, would state a claim for relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678. The Court need not accept conclusions of law as true, however, even if cast as factual allegations. *Id.* at 678.

It is not enough to show that a claim is conceivably valid; the alleged facts must "nudge" a plaintiff's claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A set of alleged facts that could just as easily point either to actionable illegal conduct or non-actionable lawful conduct does not meet this standard. *Id.* at 557.

A claim may be dismissed under Rule 12(b)(6) either for lack of a cognizable legal theory or failure to allege sufficient facts to support a cognizable legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015).

/ / /

Ariix cites this section of the Lanham Act as giving rise to its claim:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

. . .

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

The Supreme Court has recently clarified that standing under this provision is not limited to direct competitors. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1394 (2014).

**Discussion**

Ariix's claim is based on two different sets of alleged misrepresentations: First, NutriSearch misrepresented Ariix and Ariix's products as not being top quality and not Gold Medal-worthy. (Compl., ¶¶ 26, 27, 29, 40, 45); second, NutriSearch misrepresented itself as objective and neutral, when in fact it is in a "cozy" relationship with, and a "shill" for, Usana. (Compl. at 2:16–18, ¶¶ 33–39, 44–45.)

As an initial matter, the Court notes that the only specific mention of where or when these representations were publicly made was in the *Guide* itself. (Compl., ¶¶16, 18, 31.) In other words, it appears Ariix is asking the Court to award damages based on what NutriSearch said in a book it published, and to order NutriSearch to change what it says in future editions of that book. This by itself raises First Amendment concerns, and Defendants' motion argues that their speech is entitled to First Amendment protections. Defendants' argument is

essentially that the *Guide* is a consumer report or review rather than commercial advertising or promotion and, as such, is not governed by the Lanham Act.

Until 1988, this section of the Lanham Act covered only misrepresentations regarding one's own product, and not disparagement of another company's product. *See Wojnarowicz v. Am. Family Ass'n*, 745 F. Supp. 130, 141 (S.D. N.Y. 1990) (citing *Fur Info. & Fashion Council, Inc. v. E.F. Timme & Son, Inc.*, 501 F.2d 1048, 1051–52 (2d Cir. 1974)). Congress was aware of these concerns, and the legislative history makes clear Congress did not intend the Lanham Act to "stifle criticism" of goods or services by some means other than marketing or advertising. *Wojnarowicz* at 141–42 (citing S. 1883, 101st Cong., 1st Sess., 135 Cong. Rec. 1207, 1217 (April 13, 1989).) Specifically, the legislative history of the Lanham Act suggests Congress' intent to avoid trying to regulate consumer reports or consumer protection groups that review products. *Id. Accord New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1117–18 (C.D. Cal., 2004).

The Court is mindful of the Supreme Court's admonition that, when applying statutory law, courts must "give the benefit of any doubt to protecting rather than stifling speech." *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 469 (2007). This applies to "all matters of public concern . . . ." *Id.* (quoting *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 776 (1978)). Reviews of commonly-used products fit comfortably within this category. *See, e.g., Consumers Union of U.S. v. Gen. Signal Corp.*, 724 F.2d 1044, 1049 (2d Cir. 1983) ("The information about lightweight vacuums in CONSUMER REPORTS is of significant public interest."); *Forsyth v. Motion Picture Ass'n of Am., Inc.*, 2016 WL 6550059 at *2 (N.D. Cal., Nov. 10, 2016) (movie ratings). "It is a matter of public interest that [consumers' purchasing] decisions, in the aggregate, be intelligent and well informed." *Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 765 (1976).

/ / /

The Court therefore holds that the Lanham Act doesn't apply to reviews of consumer products, even if they are alleged to be biased, inaccurate, or tainted by favoritism. If a plaintiff could get around First Amendment protections simply by arguing that a reviewer is biased, the First Amendment protection accorded to product reviews would not mean much. This is not to say any publication calling itself a consumer product review actually is one, and does not constitute or contain advertising or promotion. Caselaw is replete with examples of people and entities positioning themselves as reviewers who were actually engaged in some form of commercial product promotion. *See, e.g., e.g., Casper Sleep, Inc. v. Derek Hales & Halesopolis* LLC, 2016 WL 6561386 at *7 (S.D. N.Y., Oct. 20, 2016);[1] *Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 193 F. Supp. 3d 556, 568 (E.D. Va., 2016); *Interlink Prods. Int'l, Inc. v. F & W Trading LLC*, 2016 WL 1260713 at *9 (D. N.J. March 31, 2016). And the Court's holding should not be construed to apply to other statutes, such as the FTC Act, which have their own requirements.[2] But if a publication that appears to be a consumer product review is in fact a consumer product review, it falls outside the scope of the Lanham Act's false advertising provision.

/ / /

_____

[1] This decision rejected claims based on the reviews themselves, which were held to be non-actionable, even if influenced by favoritism. *Id.* at *6–*7. The only actionable statements under the Lanham Act were held to be those asserting that the reviews were unpaid. *Id.* at *7. The reviewer had a direct financial link to mattress sellers, because he received referral fees and commissions when readers of his reviews clicked on the website's links and bought mattresses. *Id.* at *6.

[2] The FTC Act includes provisions addressing false advertising and unfair competition, *see* 15 U.S.C. §§ 45 and 52, which FTC guidelines construe to include failure to disclose compensation received in exchange for a product endorsement. *See, e.g., F.T.C. v. Chinery*, 2009 WL 792070 at *2 (D. N.J., March 23, 2009) (consent decree).

The fact that § 1125(a)(1)(B) is aimed at "commercial advertising or promotion" and not other kinds of speech underscores this. The Lanham Act itself does not define these terms, however. *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999). But what is clear is that commercial advertising includes "more than the typical advertising campaign," and encompasses other types of commercial speech. *Oxycal Labs., Inc. v. Jeffers*, 909 F. Supp. 719, 723 (S.D. Cal., 1995) (citing examples of communications deemed to be commercial advertising or promotion). The Ninth Circuit has explained what constitutes commercial advertising or promotion under the Lanham Act:

> 1) commercial speech; 2) by a defendant who is in commercial competition with plaintiff; 3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion,' the representations 4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry.

*Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 1991) (quoting *Coastal Abstract*, 173 F.3d at 735). After *Lexmark*, the second element is likely in need of revision.[3] 134 S. Ct. at 1394. But the first and fourth elements were not implicated by *Lexmark*'s holding, and remain good law. *See id.* at 1385 n.1 (declining to decide the issue of whether the communications at issue constituted commercial advertising).

"The core notion of commercial speech is 'speech which does no more than propose a commercial transaction.'" *Rice*, 330 F.3d at 1181 (quoting *City of*

---

[3] After *Lexmark*, this element might be construed as requiring that the statements be made for the purpose of influencing consumers to buy particular goods or services—whether those are the defendant's goods and services or someone else's. But for purposes of this order, the Court need not reach this question.

17CV320-LAB (BGS)

*Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993)). The Supreme Court relied on three factors to determine whether statements amounted to commercial speech: whether they were in an advertising format, whether they referred to a specific product, and economic motivation for publication. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66–68 (1983). *See Assoc. of Nat'l Advertisers, Inc. v. Lungren*, 44 F.3d 726, 728 (9th Cir. 1994) (outlining the *Bolger* factors). No single factor, even an economic motive, is enough to render speech commercial. *Bolger*, 463 U.S. at 67. Courts have repeatedly cautioned that commercial speech "not be defined too broadly lest speech deserving of greater constitutional protection be inadvertently suppressed." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 579 (1980) (Stevens, J., concurring); *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 961 (9th Cir. 2012) (quoting this concurrence).

Publications have sometimes met this requirement. *See, e.g., Semco, Inc. v. Amcast, Inc.*, 52 F.3d 108, 112–13 (6th Cir. 1995) (article written for a trade magazine and "peppered with advertising" for the defendant company's products was held to be a commercial promotion). By contrast, a book whose main purpose was not the proposal of a commercial transaction was not commercial speech, even though the book was offered for sale. *See Oxycal*, 909 F. Supp. at 725 (rejecting argument that book was commercial speech merely because it was offered for sale). The fact that the book included an appendix that may have promoted sale of a product by the author's store was not enough to convert it to commercial speech, because the book's purpose was not primarily to sell any of the products listed in the book. *Id.* at 726. Also, the fact that a publication sells or includes advertising likewise does not render it, as a whole, commercial speech. *See Dex*, 696 f.3d at 960–61 (collecting cases).

Where the general purpose of a book is not the promotion of a commercial transaction, the book may nevertheless contain commercial speech. *Oxycal*, 909

17CV320-LAB (BGS)

F. Supp. at 724 (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 419–21 (1993)). If the book's main purpose remains non-commercial, and the commercial and non-commercial components are "inextricably intertwined" the entire book is treated as fully protected. *Oxycal* at 724–25 (citing *Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 795–96 (1988)). On the other hand, companies are not allowed to "mask" the commercial nature of a publication merely by adding informational content. *Oxycal* at 724 (citing *Bolger*, 463 U.S. at 62). *See also Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 474–475 (1989) (Tupperware parties were commercial speech even though they included noncommercial instruction in home economics).

Here, the complaint's allegations suggest that the *Guide*, taken as a whole, is non-commercial speech and therefore, under *Rice*, not commercial advertising or promotion. 330 F.3d at 1181. Any arguably commercial elements appear to be inextricably intertwined with the Guide's overriding noncommercial purpose. The *Guide* is considered a reputable guide to supplements for both consumers and professionals. (Compl. at 1:5–7, ¶¶ 10–12.) This requires that it review supplements such as those produced by Usana and Ariix. It also explains why Ariix wants to be listed among the Gold Medal awardees. The *Guide* covers over 1,500 U.S. and Canadian supplements produced by different companies.[4] (*Id.*, ¶ 45.) NutriSearch itself does not sell any of the nutritional products reviewed in the *Guide*, and does not have an ownership interest in the companies that produce them. (*Id.*, ¶ 48.) And there is no allegation that NutriSearch solicits or accepts paid advertising or that it was paid in any direct fashion for promoting Usana's or

---

[4] The Complaint disputes the quality, fairness, and neutrality of the reviews, but not the number of products reviewed. In addition the fact that the *Guide* is considered comprehensive makes clear it reviews many different nutritional products.

any other company's products or disparaging Ariix's. Instead, the Complaint alleges a "cozy" relationship between the two companies by which NutriSearch and the *Guide*'s author MacWilliam indirectly profit.

Even though the *Guide* as a whole may not be commercial, statements in it could be. *See Oxycal*, 909 F. Supp. at 724 (citing *Discovery Network*, 507 U.S. at 419–21). *See also Semco*, 52 F.3d at 113 (noting that an article's author could have omitted the commercial elements from an otherwise non-commercial article). That does not appear to be the case here; the allegedly commercial statements appear to be an integral part of the *Guide*. Nevertheless, because Ariix might be able to allege additional facts showing that at least some of the allegedly false or misleading commercial statements are separable from the noncommercial ones, the Court addresses them.

Turning to the statements of NutriSearch's and MacWilliam's own neutrality, these apply to the entire *Guide* as a whole, not to particular products or companies mentioned in it. The Complaint alleges that "each edition of the guide contains" this statement:

> This guide is intended to assist in sorting through the maze of nutritional supplements available in the marketplace today. It is not a product endorsement and does not make any health claim. It simply documents recent findings in the scientific literature.

> This guide was not commissioned by any public sector or private sector interest, or by any company whose products may be represented herein. The research, development, and findings are the sole creative effort of the author and NutriSearch Corporation, neither of whom is associated with any manufacturer or product represented in this guide.

(Compl., ¶ 16.) These statements are arguably commercial speech only insofar as they promote the *Guide*, and encourage people to buy it. They do not "propose a commercial transaction" about any other product and apply to every company and product the *Guide* covers, not just to some.

/ / /

But because there is no allegation that they appear anywhere other than inside the *Guide* itself, they do not meet *Rice*'s fourth element that they be sufficiently disseminated to the relevant purchasing public to constitute advertising or promotion within the publishing or bookselling industry. Viewed in light of the factors mentioned in *Bolger*, they also do not appear to be commercial speech.

These statements are analogous to statements made during certain television specials, discussed in *Rice*. The statements at issue were made by the show's host, promising that viewers would be able to see how certain magic tricks were performed "*tonight, for the first time on television*"—which the plaintiff alleged was false. *Rice*, 330 F.3d at 1180–81 (emphasis in original). The Ninth Circuit held those statements were part of the show itself, and therefore not commercial advertising or promotion at all, within the meaning of the Lanham Act. *Id.* at 1181. Even if those statements were false, they were not actionable as false advertising under the Lanham Act. *Id.* Likewise, even if MacWilliam and the *Guide* are not as neutral as they claim to be, these statements in the *Guide* itself are not actionable here. In addition, the *Guide*'s statements touting its and MacWilliam's neutrality and reliability also can only plausibly be connected with any harm to Ariix in connection with statements about Usana and Ariix. In other words, Ariix's claim as to these statements can only succeed if its claim as to the other statements do.

Turning to the statements about Usana and Ariix, the Complaint does not plead facts plausibly suggesting that they are commercial speech, or even that they are false or misleading. First, the factual allegations do not plausibly suggest that the *Guide* is proposing a commercial transaction. Usana and Ariix are not the only companies, and their products are not the only ones reviewed or compared. Rather, the allegations suggest the *Guide* is comprehensive, which means it must review at least a good portion of all relevant products. Even focusing just on the Gold Medal award, four different companies have received that distinction. If the other three companies are not Usana's competitors, the Complaint fails to allege

17CV320-LAB (BGS)

this. The sheer numbers suggest that the *Guide* is mainly in the business of reviewing a large number of different products, rather than promoting the purchase of a particular product or even one company's products. By providing ratings and Gold Medal awards, the *Guide* likely encourages the purchase of some products over others, but that's the nature of a product review.

Second, the allegations do not plausibly suggest that the *Guide* is carrying out anything analogous to commercial advertising for Usana. Accepting the allegations as true, as the Court must at this stage, they plausibly suggest the *Guide* is biased and, in spite of its claims to objectivity, unfairly favors Usana over Ariix. But by itself, an unfair review is not actionable under the Lanham Act, because it is not commercial advertising or promotion.

To be sure, the Complaint alleges ties between the *Guide* and MacWilliam, on the one hand, and Usana on the other. But it does not plausibly suggest that the *Guide* is engaged in commercial advertising or promotion. The Complaint alleges that both MacWilliam and NutriSearch's current CEO Gregg Gies are former Usana employees, and that MacWilliam originally conceived the *Guide* as a way to promote Usana's products. (Compl., ¶¶ 33–34.) Given that the *Guide* is now on its fifth edition, facts surrounding its genesis years ago are not particularly suggestive of any current financial arrangement with Usana. MacWilliam's and Gies' status as former Usana employees at most suggest that they are favorable to Usana, not that they are being paid to advertise its products.

The Complaint alleges that Usana compensates NutriSearch indirectly, because it heavily promotes the *Guide* and "encourage[es] its representatives and consumers" to buy it. (Compl., ¶ 35.) In some circumstances, this might plausibly point to some kind of *quid pro quo*, but here it does not. It is entirely normal for a company whose products have been favorably reviewed in a particular publication to seek to publicize that fact as widely as possible. *See, e.g., Gordon & Breach Science Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1544–45 (S.D.

17CV320-LAB (BGS)

N.Y. 1994) (giving examples of businesses promoting and disseminating favorable third-party reviews). This is at least as consistent with lawful behavior as it is with some kind of disguised *quid pro quo*. *See Twombly*, 550 U.S. at 570.

The Complaint also alleges that MacWilliam accepts paid speaking engagements for Usana, but has at least once declined to speak at an Ariix convention. (Compl. at 3:10–14, ¶¶ 36–40.) While this *could* suggest some economic motive, there are no factual allegations suggesting MacWilliam's speaking fees are under-the-table payments for advertising, or that the speaking engagements are some kind of sinecure for Usana to funnel money to MacWilliam or NutriSearch. This suggests, at most, an indirect economic motive to favor Usana and its products.

Ariix alleges it offered MacWilliam a similar opportunity, which potentially hurts Ariix's position. If, as Ariix implies, NutriSearch is essentially making money by selling advertising, it gave up money by turning down Ariix's offers. Ariix tries to explain that by implying some kind of exclusivity arrangement between Usana on the one hand and NutriSearch and MacWilliam on the other. But if there is some agreement—or even a conspiracy among MacWilliam, NutriSearch, and Usana—the Complaint has not adequately alleged it. The Complaint does not say whether MacWilliam accepted speaking fees from any other company.

This is not to say that unpaid advertising cannot be commercial speech or constitute commercial advertising or promotion. *See Semco*, 52 F.3d at 113–14. But plausible allegations of payment or of some other kind of *quid pro quo*, can help show that representations were commercial speech (which involves an economic motive) rather than noncommercial product reviews. *See Bolger*, 463 U.S. at 68 (holding that economic motive is not by itself sufficient to render speech commercial, while treating it as one factor to be considered).

The Guide is not alleged to be in advertising format. It refers to particular products, but in this case that is entirely unremarkable because it is a product

review. The sheer number of products mentioned and the fact that Usana's products are only one of many reviewed suggest that this factor does not weigh in favor of the *Guide* or any of the many statements in it being commercial speech. And any alleged economic motive is too indirect to transform what would otherwise be noncommercial product reviews into commercial speech or disguised commercial advertising. Even if the *Guide* is biased or its evaluations unfair, or Defendants' objectivity is tainted by the alleged economic relationships with Usana, there are no plausible allegations that Defendants are engaged in commercial speech. And the Complaint has not alleged facts plausibly suggesting that the *Guide* and its Gold Medal awards are anything other than product reviews, which are not covered by the Lanham Act.

By its terms, the Lanham Act's false advertising provision only covers false or misleading statements of fact. 15 U.S.C. § 1125(a)(1). Statements of opinion are generally not actionable. *Coastal Abstract*, 173 F.3d at 731. The Complaint makes reference to the *Guide*'s ratings system being objective, meaning it is capable of being shown to be false or misleading. *See id.*, 173 F.3d at 730–31. It says almost nothing specific about NutriSearch's ratings process or criteria for the Gold Medal award, however. The factual allegations suggest that the *Guide* purports to review scientific literature and provide product evaluations in light of that. (Compl., ¶ 45.) While this is within the realm of research science in a very general way, the *Guide*'s role appears to be that of an evaluator that awards ratings up to five "stars". (*Id.*, ¶ 40.) Decisions about how criteria are selected and weighed are themselves not necessarily objective, even though the information that is being used may be. It may not be necessary to set allege the exact way ratings are arrived at and assigned, and how the Gold Medal is awarded. But without at least some allegations, there is no plausible showing of anything false or misleading (which is actionable) as opposed to a company disappointed by unfavorable product reviews (which is not). Furthermore, the Complaint asserts

17CV320-LAB (BGS)

that the *Guide*'s criteria are subjective and the bases for its evaluations are not disclosed. (Compl., ¶ 45.) In other words, the allegations do not plausibly suggest that the *Guide* makes anything other than statements of opinion about Usana, Ariix, and their products.

**Conclusion and Order**

The motion to dismiss is **GRANTED IN PART**. The Complaint is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

In the absence of a properly pled claim, the Court cannot evaluate *forum non conveniens* factors, especially those relating to the likely location of evidence and witnesses. *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145–46 (9th Cir. 2001) (directing district courts to consider certain private interest factors). The request to stay or dismiss the case on *forum non conveniens* grounds is therefore **DENIED WITHOUT PREJUDICE**. Ariix's motions to strike or for leave to file a sur-reply (Docket nos. 10, 12) are **DENIED AS MOOT**.

Ariix may file an amended complaint that corrects the defects this order has identified, no later than **Thursday, April 19, 2018**. Any extensions should be requested by *ex parte* motion, showing good cause. If Ariix fails to amend within the time permitted, this action will be dismissed with prejudice.

**IT IS SO ORDERED**.

Dated: March 23, 2018

_____
Hon. Larry Alan Burns
United States District Judge

17CV320-LAB (BGS)