# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIIX, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>NUTRISEARCH CORPORATION, et al.,<br><br>                    Defendant. | Case No.: 17CV320-LAB (BGS)<br><br>**ORDER GRANTING MOTION FOR LEAVE TO FILE SUR-REPLY; AND**<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>**[DOCKET NUMBERS 21, 26.]** |

      Plaintiff Ariix, LLC is a nutritional supplement company that competes fiercely with Usana Health Sciences, Inc. Defendant NutriSearch Corporation publishes the *NutriSearch Comparative Guide to Nutritional Supplements*, a guide to nutritional products that is relied on by consumers and professionals. Among the professionals who rely on it are independent sales representatives, who make decisions based in part on ratings in the *Guide*. The *Guide* reviews various companies' products, including both Ariix's and Usana's. It also includes a general informational section discussing the benefits and science of supplementation generally. The *Guide* has been published for years. It is updated from time to time and is now in its sixth edition.

The *Guide*'s fifth edition awarded the Gold Medal of Achievement designation to companies that meet particular standards, and over time awarded this distinction to four different companies. Ariix made a vigorous effort to qualify for the Gold Medal, but was denied. According to the first amended complaint ("FAC," Docket no. 20), NutriSearch admitted Ariix had met the standard, but refused to award the company the Gold Medal because it was reworking its criteria for the distinction. The existing Gold Medal holders, including Usana, were "grandfathered" in during this period. The new sixth edition includes a different medal awards system, with bronze, silver, gold, diamond, and platinum tiers. Usana was awarded a platinum medal and was the only manufacturer so honored. Ariix does not allege that Usana did not meet the criteria for this award, or that Ariix or any other manufacturer did. Nor does it allege what kind of medal, if any, it was awarded.

Ariix brought a Lanham Act claim against both NutriSearch and the *Guide*'s author, Lyle MacWilliam, under a false advertising theory. The Court dismissed Ariix's original complaint. Its order included extensive analysis, discussion, and application of statutory and case law. The order also made several rulings which are now law of the case. And it pointed out defects in the complaint that Ariix would have to correct if its amended complaint were to survive a second motion to dismiss. Because the authority and reasoning cited in the Court's earlier is just as applicable here, this order incorporates much of the content of that earlier order. This order also notes rulings the Court made, which are now law of the case.

**Overview of Motions**

Defendants NutriSearch and MacWilliam filed a motion (Docket no. 21) under Fed. R. Civ. P. 12(b)(6) to dismiss the complaint for failure to state a claim. In the alternative, it requested a stay or dismissal under the *forum non conveniens* doctrine. In its opposition, Ariix represented that it had recently voluntarily dismissed a related case it had filed in a Canadian court. In its reply, Defendants

2
17CV320-LAB (BGS)

expressed doubt about whether it had actually been dismissed, but argued that even if it had, this action should be dismissed because of Ariix's forum shopping.

Ariix filed an *ex parte* motion asking the Court to allow it to file a surreply to respond to Defendants' new arguments about the status of the Canadian case. That unopposed motion (Docket no. 26) is **GRANTED** and the proposed surreply attached to the motion is deemed filed.

**Motion to Dismiss Under Rule 12(b)(6)**

**Legal Standards**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a motion to dismiss, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars-Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). The Court is not required to accept any unreasonable inferences, however. *Brown v. Electronic Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013). New or expanded allegations in opposition to a motion to dismiss are considered when deciding whether to grant leave to amend, but are not considered when ruling on a 12(b)(6) motion. *See Schneider v. Cal. Dep't of Corr. & Rehab.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

The pleading standard is governed by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and its factual allegations must "raise the right to relief above a speculative level." *Id.* at 555. The complaint must contain enough factual allegations that, accepted as true, would state a claim for relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678.

The Court need not accept conclusions of law as true, however, even if cast as factual allegations. *Id.* at 678. For example, allegations claiming that a

3
17CV320-LAB (BGS)

particular element of the claim is met can be treated as legal conclusions even if they seem factual in nature or they use factual terms. In *Brown*, the Ninth Circuit examined a Lanham Act claim based on the use of Jim Brown's likeness in the defendant's video game *Madden NFL*. The panel rejected as an unwarranted legal conclusion Brown's allegation that the defendant "attempted to mislead consumers" about his involvement with the game. 724 F.3d at 1248. The panel similarly rejected as an unwarranted legal conclusion his allegation that the use of his likeness in the game was not artistically relevant to the game. *Id.*

It is not enough to show that a claim is conceivably valid; the alleged facts must "nudge" a plaintiff's claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A set of alleged facts that could just as easily point either to actionable illegal conduct or non-actionable lawful conduct does not meet this standard. *Id.* at 545, 557.[1] The Court may also look to earlier pleadings to determine the plausibility of amended complaint. *See Royal Primo Corp. v. Whitewater W. Indus., Ltd.*, 2016 WL 1718196, at *3 (N.D. Cal., Apr. 29, 2016) (citing, among other cases, *Rodriguez v. Sony Comput. Entm't Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015)).

A claim may be dismissed under Rule 12(b)(6) either for lack of a cognizable legal theory or failure to allege sufficient facts to support a cognizable legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015).

///

---

[1] Ariix's opposition argues that this standard applies only to claims for antitrust conspiracies, not claims concerning other types of conspiracies or unlawful agreements. But because *Twombly* deals with the Fed. R. Civ. P. 8(a) pleading standard, 550 U.S. at 545, this principle applies equally to any case to which that standard applies. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (holding that a complaint that pleads facts "merely consistent with" a defendant's liability stops short of showing plausible entitlement to relief).

4

17CV320-LAB (BGS)

Because the Court's order pointed out defects in the original complaint and Ariix has had the opportunity to amend, the Court will construe failure to remedy those defects as evidence that Ariix cannot do so and that giving more chances to correct those defects would be futile. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

The statute of limitations for claims under this section in federal courts in California appears to be either three or four years. *See Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096, 1114 (N.D. Cal. 2008) (citing Ninth Circuit cases leading to different results); *see also Tortilla Factory, LLC v. Better Booch, LLC*, 2018 WL 4378700, at *5 (C.D. Cal., Sept. 13, 2018) (concluding that the limitations period is three years in California). This is relevant here, both because it limits the ways Ariix might successfully amend a claim if given the opportunity, and also because it helps distinguish between factual allegations that Ariix intends to serve as a basis for its claim and factual allegations included merely make a claim clearer or more plausible. As an example of the latter, the FAC includes allegations about events that happened from 2005 to 2011. The fact that Ariix was founded seven years before this lawsuit was filed (FAC, ¶¶ 4, 35, 38) and that the fifth edition of the *Guide* was published in 2014 (*Id.*, ¶ 42) also help put earlier events in the proper focus. Defendants have not raised the statute of limitations as a defense, however, and the Court is not basing its ruling on the running of the statute of limitations.

**Lanham Act**

Ariix cites this section of the Lanham Act as giving rise to its claim:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

. . .

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). Standing under this provision is not limited to direct competitors. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1394 (2014).

In its earlier order the Court held, on the basis of precedent, legislative history, and the Supreme Court's general guidance about statutory interpretation, that the Lanham Act does not apply to reviews of consumer products. This is true even if they are alleged to be biased, inaccurate, or tainted by conflicts of interest. *See Casper Sleep, Inc. v. Derek Hales & Halesopolis LLC*, 2016 WL 6561386 at *7 (S.D. N.Y., Oct. 20, 2016) (holding that online reviews of mattresses were non-actionable under the Lanham Act even if the reviewer received commissions from sellers). If a plaintiff could get around First Amendment protections simply by arguing that a reviewer is biased, the robust First Amendment protection accorded to product reviews would not mean much. *See Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 961 (9th Cir. 2012) (cautioning that commercial speech "not be defined too broadly lest speech deserving of greater constitutional protection be inadvertently suppressed").

This is not to say any publication calling itself a consumer product review actually is one. People and entities have often positioned themselves as reviewers when in fact they are merely trying to sell a product. In such cases, their "reviews" are commercial advertising. *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 1991) (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)) ("The core notion of commercial speech is 'speech which does no more than propose a commercial transaction.'") But if a publication that

appears to be a consumer product review is in fact a consumer product review, it falls outside the scope of the Lanham Act's false advertising provision.

The Court also held that the fact that third parties cite to or use product reviews to promote their own products does not bring reviews within the scope of the Lanham Act. This is a common business practice, and does not transform what would otherwise be a product review into commercial advertising.

The Court recognizes that reviewers who have undisclosed conflicts of interest may be liable under other laws, such as the FTC Act or various states' advertising or unfair competition laws. But Ariix is bringing claims under the Lanham Act only, not under some other statute or theory.

This section only covers false or misleading statements of <u>fact</u>. *See* 15 U.S.C. § 1125(a)(1). Statements of opinion are generally not actionable. *Coastal Abstract*, 173 F.3d at 731.

**Discussion of Amended Allegations**

Ariix has brought claims based on alleged misrepresentations in the *Guide*. Its argument is that NutriSearch and MacWilliam unfairly positioned Ariix less favorably than its rival Usana while claiming to be objective and neutral. One set of allegedly false representations is that Ariix or its products are not as good as Usana or its products. This takes the form of awards or accolades the *Guide* bestowed on Usana but not Ariix, based on supposedly objective criteria. The second is that NutriSearch and MacWilliam, while claiming to be objective and neutral, are actually shills for Usana. Thus, the argument goes, their awards or accolades are actually commercial advertisement. Ariix also contends that it met objective criteria for the awards, but Defendants withheld them so as to benefit Usana.

Ariix also made allegations about the product review process not being objective, but it has not pled any claims based on supposedly inaccurate or unfair

7

17CV320-LAB (BGS)

product reviews.[2] Nor could it do so because, for reasons discussed below, such a review would not be actionable.

**General Amendments**

The FAC, like the original complaint, treats the *Guide* as a whole as commercial advertising. The Court has already rejected that argument. The FAC's amendments do nothing to undermine this holding, and in fact support it. For example, the FAC makes clear it includes two major sections: a set of ratings of 1,500 different nutritional supplements sold by different companies, and general information about supplementation. (FAC, ¶ 10.) Although the FAC alleges the informational section emphasizes facts that would encourage readers to buy Usana, the factual allegations make clear it is informational. The only feature alleged to be commercial advertising are the *Guide*'s awards. But even if the awards were commercial advertising, this would not suffice to bring the entire book within the statute. *See Dex*, 696 F.3d at 960–61.

Furthermore, the sheer number of supplements and the number of companies whose supplements are reviewed makes it implausible that the purpose of the reviews is merely to urge consumers to buy Usana's products. *See Rice*, 330 F.3d at 1181. In addition, the book is sold commercially as a guide to supplements, and is regarded as a standard guide on the subject.

Ariix's opposition discusses both Defendants and sometimes also third parties as if they were a unity. The Court rejects the implicit assertion, unsupported by factual allegations, that the Defendants are interchangeable, or that actions of third parties such as Usana are attributable to Defendants. For example, third

---

[2] The only allegations about any specific product review concern events in 2011, when Usana allegedly fed NutriSearch inaccurate information about a supplement Ariix was planning to market. (FAC, ¶¶ 38–40.) The review appeared in an earlier edition of the *Guide* that is not the basis for any claim.

parties' characterization of the *Guide*'s evaluations as scientific or unbiased are not attributable to Defendants. Although the FAC alleges both NutriSearch and MacWilliam made decisions about the awards, they are not alleged to be engaged in a conspiracy with each other, nor are they each other's agents or alter egos.

Although the FAC alleges that both NutriSearch and MacWilliam made decisions about certain accolades awarded in the *Guide*, the factual allegations do not show they should be treated as a single entity subject to the same conflicts of interest or liable for each other's acts. For example, nothing in the FAC explains why a speaking fee paid to MacWilliam would influence NutriSearch. Nor does it show that actions or statements by third parties such as Usana are attributable to either of them.

**Claims of Independence**

The *Guide* itself included a preliminary note, disclaiming any association between either MacWilliam or NutriSearch and any manufacturer or product the *Guide* reviewed. The Court already rejected this as a basis for a claim, because it was part of the *Guide* and disseminated no more widely than the *Guide* itself. *See Rice,* 330 F.3d at 1181 (holding that claims about a television show made in the course of the show were part of the show itself, and were therefore not commercial advertising within the meaning of the Lanham Act). The FAC adds allegations that the disclaimer can be and likely is viewed by potential buyers online, but this does little to advance the argument. Furthermore, the disclaimer was intended to promote trust in the *Guide*, not to promote supplements or their manufacturers. Only to the extent the *Guide* said something actionable about Usana and Ariix could such a claim succeed.

The FAC explains that the sixth edition omitted remark about the absence of any association with a manufacturer or product, and argues that this shows Defendants knew it was false. (FAC, ¶ 12 and n.1.) But the omission could be due to any number of other innocent reasons, including the obvious fact that the

remark was cited in this lawsuit. And the fact that the *Guide* no longer represents that NutriSearch and MacWilliam are disinterested means the sixth edition is even less likely than the fifth to be the basis for a claim.

The FAC also adds allegations about what MacWilliam said about the *Guide* when he appeared on the Dr. Oz show in 2016. (FAC, ¶ 14.) But these are far too vague, tentative, and unquantifiable to amount to a misrepresentation about Defendants' independence. *See, e.g., Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) (contrasting actionable and non-actionable claims under the Lanham Act). It says other similar remarks were made online or in press releases, but these are not quoted and are not alleged to be any more specific than the non-specific remarks the Court has already rejected as a basis for liability.

**Claims That Accolades Were Awarded Objectively**

Most of the FAC's allegations pertain to claims that product reviews were based on objective criteria which, as discussed *supra*, are not part of Ariix's claims. In a few allegations, Ariix also claims Defendants misrepresented the methodology for awarding accolades, claiming it was an objective, precise, and scientific process when in fact it was rigged. The awards are intended to recognize manufacturers that comply with the FDA's "good manufacturing practices" and that, through independent laboratory analysis, have proved their products include what the labels say they do. Details of the standards and methodology are apparently not revealed to the public, and the FAC alleges some were kept secret. (FAC, ¶ 46.)

After several companies won the Gold Medal award in 2008, the FAC alleges USANA demanded that it be positioned ahead of its competitors. (FAC, ¶ 23.) The FAC alleges that NutriSearch then created a new "Editor's Choice" award and gave it to Usana. (*Id.*, ¶ 24.) But it does not allege what the criteria for that award were, or that Defendants or anyone else ever claimed they were objective. The very

name suggests the award is at least in part subjective. And the FAC does not allege the Editor's Choice award was given out after 2008,[3] which was well before Ariix was founded.

The FAC describes Ariix's quest for the Gold Medal award and the sixth edition's new medals in paragraphs 41–54. Ariix first applied for Gold Medal status in 2014, but because it misunderstood the application requirements, it was denied. (FAC, ¶ 44.) It then corrected its application and reapplied. But by that time, NutriSearch said that because of an expose on certain labs on NBC's Dateline, it would not accept the results Ariix had submitted and insisted on analysis by an approved lab. (*Id.*, ¶¶ 46–47.) This was applied going forward only, such that Usana and the other previous Gold Medal winners were grandfathered in. (*Id.*, ¶ 47.) This new requirement apparently applied to all new Gold Medal applicants, and all previous recipients were grandfathered in. Any suggestions that it was aimed at positioning Usana ahead of Ariix (*see id.*, ¶¶ 43, 58) are purely conclusory.

Ariix then undertook to meet the new standard, and NutriSearch commended it for its efforts. (FAC, ¶¶ 47–47.) Nevertheless, by the time Ariix completed its task, the fifth edition had already been published. (*Id.* ¶ 49.) NutriSearch offered to include it in any new printings of the fifth edition, but none were ever done. (*Id.*, ¶¶ 49, 51.) The FAC does not plausibly allege any facts to suggest that NutriSearch's decision not to print more copies of the fifth edition and instead to revise the entire *Guide* and create a sixth edition was anything other than an ordinary business decision. (*Id.*, ¶ 51.)

---

[3] The only other time the Editor's Choice award is mentioned is in paragraph 66, where the FAC says each time Usana won an award such as the Editor's Choice or any other award, it issued a press release. The FAC then described a press release from 2013, which mentioned Usana's product ratings and a Gold Medal award, but not the Editor's Choice.

Ariix claims that after it submitted its results, NutriSearch "denied" it the Gold Medal. (*Id.,* 50.) This appears to mean that NutriSearch had decided not to go ahead with any more revisions of the fifth edition, so Ariix would have no opportunity to be announced as a Gold Medal winner as promised. (*Id.,* ¶ 51.) But regardless of what it actually means, no more copies of the fifth edition were printed. Ariix could not have been harmed by being omitted as a Gold Medal winner in books that were never printed.

The FAC then alleges NutriSearch failed to notify Ariix when its new criteria were finalized, and did not prompt it to submit an application for a medal award in the sixth edition. (FAC, ¶ 54.) As a result, Ariix is not listed in the sixth edition as having won any medals. The FAC does not allege any facts suggesting Ariix had a right to be told about new criteria or prompted to submit an application. And it does not allege that Usana or other manufacturers were notified when the revisions were complete or prompted to submit new applications. But even if Ariix could allege all these things, it would not help to establish a misrepresentation claim. Alleging that the product evaluation process was unfair is just another way of criticizing a product review. If this were an accepted theory, any product reviewer would be subject to suit. But in any event, Ariix's failure to win a medal was the result of its failure to apply. And Ariix does not allege Usana did not satisfy the criteria for the medal it won.

Ariix alleges that NutriSearch and MacWilliam changed the criteria in an effort to make sure Usana and no one else won a platinum medal. (FAC, ¶¶ 28, 43.) It provides no factual support for this conclusion. Nor does the FAC allege any facts showing medals were awarded on the basis of anything other than the criteria NutriSearch developed, or that the revised criteria were unscientific. And even if Ariix thinks NutriSearch's criteria were illegitimate, as a reviewer NutriSearch is entitled to decide what its criteria should be.

/ / /

No factual allegations in the FAC plausibly show Ariix won or was entitled to be recognized with a Gold Medal award in the fifth or sixth editions, or that NutriSearch's remarks about its criteria for selecting medal winners amounted to a misrepresentation of fact. Rather, Ariix's failure to obtain the awards was a product of its failure to apply for them in time.

Furthermore, mindful of the broad latitude that product reviews are to be afforded, the Court would hesitate in any event to find that awards such as the FAC describes are in fact represented as fully objective even if they involve objective criteria. One criterion, compliance with the FDA's "good manufacturing practices," implies that some value judgments are inherently part of the process. Although the FAC posits that consumers would assume failure to earn a Gold Medal meant that the manufacturer was either unwilling to do the work to obtain the award, or was selling products that were substandard. (FAC, ¶ 77.) But the inclusion of value judgments undercuts this conclusion. Assuming they knew all the criteria for the awards, consumers could also conclude that perhaps a manufacturer did not follow practices that the FDA considered good.

Awards such as these are intended to capture a picture of a manufacturer that cannot be completely objective. *See, e.g., ZL Technologies, Inc. v. Gartner, Inc.*, 709 F. Supp. 2d 789, (N.D. Cal., 2010) (holding that, even though ranking of software companies was said to be based on objective facts, decisions about what data to rely on to determine relative quality was necessarily somewhat subjective); *Browne v. Avvo, Inc.*, 525 F. Supp. 2d 1249, 1252–53 (W.D. Wash., 2007) (discussing Avvo's lawyer rating system and the impossibility of rating lawyers with complete objectivity). Because identification and recognition of the "best" supplement manufacturers with awards necessarily involves some value judgment, the Court would not treat the *Guide*'s "Gold Medal" awards as actionable misrepresentations of fact.

///

**Allegations that Usana Paid Defendants for Advertising**

The Court earlier held that the "cozy relationship" between Defendants on the one hand and Usana on the other was not enough to show the *Guide* or anything in it amounted to commercial advertising. Among other things, the Court pointed out that the original complaint had not alleged any facts plausibly suggesting that speaking fees or Usana's purchases and recommendation of the *Guide* were some kind of under-the-table payment for promoting Usana and its products.

The FAC has now added a number of allegations, most of which amount to conclusions. The only "payments" NutriSearch is specifically alleged to have received are Usana's promotion of the *Guide*, its purchase of many copies of the *Guide*, and its use of the *Guide* to promote its products. (FAC, ¶ 22.) As the Court's earlier order points out, this behavior is fully consistent with non-actionable behavior and does not plausibly identify an under-the-table payment. A company whose products are favorably reviewed has every incentive to capitalize on those reviews by doing what Usana did, and the fact that it does so does not suggest it has entered into some kind of secret agreement with the reviewer.

The FAC makes a better case for MacWilliam's having received payments. It alleges that in 2009, after NutriSearch gave Usana the Editor's Choice award, MacWilliam decided to cash in on it, asking Usana to send him on a summer speaking tour. (FAC, ¶ 25.) Usana agreed, and paid him $90,000 that summer. (*Id.,* ¶ 26.) This does not show any payment in connection with the fifth or sixth editions, because it occurred far too early, and because the allegations describe it as an afterthought, with no previous understanding. MacWilliam approached Usana only after the award was made. (*Id.* ¶ 25.) Furthermore, a recognized and knowledgeable author who has just favorably reviewed a company is a natural choice as that company's promoter or spokesman. The obvious explanation is that the two realized a knowledgeable author who had a favorable view of a company

would work well as a spokesman or promoter. The allegations strongly suggest MacWilliam actually went on the speaking tour as agreed, and that he was paid for that rather than for a review.

The FAC alleges that Usana continues to pay MacWilliam to promote their products and to speak at meetings for its sales representatives, but has not provided any factual support for the conclusion that these are payments for advertising in the *Guide*, as opposed to actually speaking as agreed. (FAC, ¶¶ 20, 22.) The FAC also alleges MacWilliam has an exclusive speaking agreement with Usana (*id.*, ¶¶ 55–58) and that over 90% of his income comes from these speaking fees. (*Id.* at 2:9–11.) It does not say what his income is, but the total combined amount received by NutriSearch and MacWilliam is alleged to be hundreds of thousands of dollars per year. (FAC, ¶ 22.) Not all of this is speaking fees; this figure also includes the purchase of books (*id.* at 2:4–10), which the Court has held does not plausibly suggest an illicit payment. In other words, the FAC avoids alleging how much money Usana paid MacWilliam for speaking during the relevant time period, and has not alleged facts suggesting these payments were disguised payments for commercial advertising in the *Guide*.

The only alleged *quid pro quo* proposal was in 2005, when MacWilliam was working directly as a sales representative for Usana and writing the *Guide*, which he had conceived as a way to promote Usana's products. (*Id.*, 21.) At the time, the *Guide* could have been considered commercial advertising. But as the Court held earlier, the *Guide* has gone through several editions since then, and no longer qualifies as such.

MacWilliam could be liable under the Lanham Act if, while speaking, he made misrepresentations of fact about Usana or Ariix. But the only allegations show expressions of opinion or value judgments, rather than facts. And, as noted, the cited remarks did not amount to a misrepresentation of fact.

///

Accepting all the FAC's allegations as true, MacWilliam could be criticized for helping write reviews or working with NutriSearch on the *Guide* when he has an undisclosed bias or conflict of interest. But this does not suffice to establish a Lanham Act claim based on misrepresentation of facts.

Ariix's opposition argues that it "need only allege facts to plausibly suggest" that Defendants had a "direct economic motive" for their statements in order to transform protected speech into commercial speech. (Opp'n at 13:13–17.) This is incorrect. The Supreme Court has outlined three factors to consider when deciding whether statements amount to commercial speech: whether the statements were in an advertising format, whether they referred to a specific product, and economic motivation for publication. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66–68 (1983). No single factor, not even economic motive, is enough to render speech commercial. *Id.* at 67.

To survive the motion to dismiss, the FAC should have laid out its allegations almost like a road map, showing plausibly how NutriSearch and/or MacWilliam violated the Lanham Act. Instead, it has amassed a series of allegations that it asserts, taken all together, amount to a claim. The allegations it uses to try to nudge the claim from possible to plausible are, at best, light on fact and heavy on conclusion. The FAC does not articulate a coherent theory, but instead apparently asks the Court and Defendants to piece together the details of the misrepresentation. This approach might have succeeded in forestalling dismissal under the "no set of facts" standard that prevailed before *Twombly* and *Iqbal*. *See Twombly*, 550 U.S. at 570. But after those decisions, the burden to plead a claim rests squarely on Ariix; it is not the Court's or Defendants' job.

**Conclusion and Order**

This order has discussed Ariix's strongest arguments. Its other arguments fare no better. The FAC has failed to plead facts showing that the *Guide* was commercial advertising, or that it contained any commercial advertising within the

16

17CV320-LAB (BGS)

meaning of the Lanham Act. It has also failed to plausibly allege false statements about Usana's or Ariix's products.

Ariix has already been given leave to address its pleading defects and has failed to do so. Moreover, its opposition does not suggest any way it could successfully amend, nor does it seek leave to amend again. There is no reason to believe Ariix could successfully amend even if given another opportunity to do so.

Because the FAC does not state a claim, and because further amendment would be futile, this action is **DISMISSED WITH PREJUDICE** for failure to state a claim. The request to dismiss for *forum non conveniens* is **DENIED AS MOOT**. All other pending request are **DENIED AS MOOT** and all pending dates are **VACATED**.

**IT IS SO ORDERED**.

Dated: March 4, 2019

Hon. Larry Alan Burns
Chief United States District Judge